# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-859-RJC-DCK

| | |
|---|---|
| STRATEGIC POWER SYSTEMS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **ORDER**<br>) |
| SCIEMUS, LTD; ANDRE FINN; and<br>STEFAN GEISSE, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Sciemus, Ltd. And Stefan Geisse's Motion To Transfer Pursuant To 28 U.S.C. § 1404 Or, In The Alternative, To Dismiss Pursuant To Rules 9 And 12" (Document No. 24). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned finds that the pending motion to transfer should be granted.

## BACKGROUND

Strategic Power Systems, Inc. ("Plaintiff" or "SPS") initiated this action with the filing of a "Complaint" (Document No. 1) in the Superior Court of Mecklenburg County, North Carolina, on November 10, 2016. The original Complaint asserts that Sciemus, Ltd. ("Defendant" or "Sciemus") breached its fiduciary duty to Plaintiff in its capacity as a director of SPS by tortiously interfering with business relationships, fraudulently concealing, and committing unfair and deceptive trade practices. (Document No. 1-1, p.1). Plaintiff further alleged that Defendant engaged in misconduct and breached its duties to Plaintiff by, among other things, engaging in

"self-dealing and abuse of an "Exclusivity Clause," which breached its fiduciary duties to SPS. (Document No. 1-1, p.8).

Plaintiff SPS is a North Carolina corporation with a principal place of business in Charlotte, North Carolina, and "is an engineering and information technology company providing highly specialized proprietary data collection and analytics services to various industries, including power generation." (Document No. 1-1, pp.2-3). Defendant Sciemus is organized under the laws of England and Wales, with a headquarters in London, England, and "is a data and analytics company advising the power generation insurance sector, among others, on expected asset behavior and risk quantification, over asset lifespan." Id.

On November 14, 2016, this case was "designated to the North Carolina Business Court by Order of the Chief Justice of the North Carolina Supreme Court." (Document No. 1-2, p.1). On December 21, 2016, Defendant filed its "Notice Of Removal" (Document No. 1) with this Court. Defendant Sciemus' "Notice…" asserted that removal to this Court was "preliminarily proper" as the "District Court in the federal judicial district encompassing the Superior Court where this suit was originally filed." (Document No. 1, p.5).

> However, Sciemus denies that venue was properly laid in the Superior Court because, *inter alia*, filing this action in North Carolina was in violation of the exclusive jurisdiction and venue provisions of the Shareholder Agreement. Sciemus reserves all defenses as to jurisdiction and venue which will be presented to this Court at the appropriate procedural juncture.

Id.

On January 27, 2017, "Defendant Sciemus, Ltd.'s Motion To Transfer Pursuant To 28 U.S.C. § 1404 Or, In The Alternative, To Dismiss Pursuant To Rules 9 And 12" (Document No. 13) was filed, asserting that this matter should be transferred to the United States District Court for the Southern District of New York, or dismissed.

2

On February 10, 2017, Plaintiff responded by filing an "Amended Complaint" (Document No. 16) and a "…Response In Opposition To Defendant Sciemus, Ltd.'s Motion To Dismiss" (Document No. 17). Based on Plaintiff's timely Amended Complaint, the undersigned issued a "Memorandum And Recommendation" (Document No. 19) recommending that "Defendant Sciemus, Ltd.'s Motion To Transfer Pursuant To 28 U.S.C. § 1404 Or, In The Alternative, To Dismiss Pursuant To Rules 9 And 12" (Document No. 13) be denied as moot. The "Memorandum And Recommendation" (Document No. 19) was later adopted by the Honorable Robert J. Conrad, Jr. on July 13, 2017. (Document No. 29).

Plaintiff's Amended Complaint, *inter alia*, adds Finn and Stefan Geisse ("Geisse") as Defendants. (Document No. 16, p.1). The Amended Complaint asserts the following claims: (1) breach of fiduciary duty (against all Defendants); (2) fraud (against Finn and Sciemus); (3) and unfair and deceptive trade practices (against all Defendants). (Document No. 16, pp.11-15).

The Amended Complaint includes the following "facts applicable to all counts."

> Based on the representations of Sciemus's CEO Finn that Sciemus would use its existing business relationships to expand SPS into the insurance market, SPS agreed to begin working with Sciemus. The parties also **entered into the** November 15, 2010 Stockholders Agreement **(the "Stockholders Agreement")**, **whereby Sciemus became a minority shareholder and acquired the power to appoint a Director of SPS, based on the understanding that Sciemus would follow through on its promise to promote their partnership within the insurance industry.** As part of the trust placed in Sciemus as a new shareholder and de facto Director of SPS, the **Stockholders Agreement** provided that SPS would be prevented from licensing its valuable energy data in the insurance market without Sciemus's prior approval ("**Exclusivity Clause**").
> . . .
> During this entire relationship, however, Sciemus never produced a single business opportunity for SPS and never promoted the partnership as promised by Finn.
> . . .

3

> The purpose of SPS's relationship with Sciemus, both as a licensee of SPS's data and as appointor of one of SPS's Directors, was to open new business opportunities in the insurance space and for Sciemus to present business opportunities to SPS through its contacts in the power generation insurance sector.

(Document No. 16, pp.5-6) (emphasis added).

Now pending before the Court is Defendants' renewed "…Motion To Transfer Pursuant To 28 U.S.C. § 1404 Or, In The Alternative, To Dismiss Pursuant To Rules 9 And 12" (Document No. 24), filed on March 15, 2017. The pending motion has been fully briefed, and immediate review and disposition is now appropriate.

## STANDARD OF REVIEW

Regarding a change of venue, 28 U.S.C. § 1404 provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). In addition, previous decisions by this Court are instructive.

> Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and witnesses, in the interest of justice," transfer the action to another district where venue is proper. 28 U.S.C. § 1404(a) (2006). This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties. AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)). In this case, to consider the convenience and fairness to the parties of a transfer, the validity of the forum selection clause must be determined.
>
> . . . The Supreme Court has held that **forum selection clauses are prima facie valid unless the objecting party can prove that enforcement of the clause would be unreasonable**. See Bremen v. Zapata, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Case law has developed standards to determine when enforcement of a forum selection clause would be "unreasonable:" (1) if the formation of the clause was procured by fraud or

> overreaching, (2) if the complaining party will be deprived of his day in court because of the inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy, or (4) enforcement of the clause would contravene a strong public policy of the state. See Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 595, 111 S.Ct. 1152, 1528, 113 L.Ed.2d 622, ---- (1991); See, e.g., Bremen, 407 U.S. at 12-13, 15, 18 (1972).

McLeod Addictive Disease Center, Inc. v. Wildata Systems Group, Inc., 3:08-CV-027-GCM, 2008 WL 2397614, at *1-2 (W.D.N.C. June 10, 2008) (granting Defendant's motion to transfer) (emphasis added). "The Court emphasizes that the applicable law contemplates that a court's decision to transfer or not transfer venue under 28 U.S.C. § 1404(a) is largely discretionary." 3A Composites USA, Inc. v. United Industries, Inc., 5:13-CV-083-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014).

"Although the presence of a forum selection clause will be a 'significant factor that figures centrally in the district court's calculus,' the Court guides district courts to 'weigh in the balance a number of case-specific factors.'" Giammattei v. Bertram Yacht, Inc., 3:09-CV-399-RLV, 2010 WL 2593612, at *2 (W.D.N.C. June 23, 2010) (quoting Stewart, 487 U.S. at 29).

> When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. Id. at 96. The factors are accorded different weights based on the court's discretion. Id.

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 362 (W.D.N.C. 2003) (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C. 1990)); see also, Cohen v. ZL Technologies, Inc., 3:14cv377–FDW–DSC, 2015 WL 93732, at *1–2 (W.D.N.C. Jan. 7, 2015); and Mitsui Sumitomo Ins. Co. of America v. Travelers Property Cas. Co. of America, 3:15-CV-207-RJC-DCK, 2015 WL 5918042 (W.D.N.C. Oct. 9, 2015).

## DISCUSSION

The Court in its discretion finds good cause to allow Defendants' motion to transfer to the Southern District of New York and the undersigned will, therefore, decline to make any recommendation as to the alternative request to dismiss. In short, the undersigned finds that this matter substantially arises from the parties' Stockholders Agreement, which provides a valid forum selection clause that dictates that New York is the proper venue for this action. See 28 U.S.C. § 1404(a).

In reaching the determination that this matter should be transferred, the undersigned has considered whether the forum selection clause is reasonable, and has applied the eleven factors identified in Jim Crockett Promotions, Inc. v. Action Media Group, Inc., as discussed below.

> Where, as here, a forum selection clause is present that directs venue to a different forum, that burden shifts to the plaintiff to demonstrate that enforcement of the clause would be "unreasonable." Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). The court then engages in a four-part test to determine whether the clause is unreasonable. Id. If deemed reasonable, the choice of forum clause establishes the presumption of enforcement. Cable–La, Inc. v. Williams Communications, Inc., 104 F.Supp.2d 529 (M.D.N.C.1999).
>
> Having established the presumption directed by the choice of forum clause, the court then proceeds to analyze eleven (11) factors—including the forum selection clause—to determine whether to grant the motion to transfer under 28 U.S.C. § 1404(a). Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93 (W.D.N.C. 1990).

6

Inheanacho v. ABC Bus Leasing, Inc., 3:12-CV-343-RJC-DCK, 2013 WL 636876, at *2 (W.D.N.C. Feb. 20, 2013).

A.  **Forum Selection Clause**

Plaintiff has not persuasively argued that the forum selection clause in the Stockholders Agreement is invalid or unreasonable. See Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). The relevant passage from the "Note Cancellation, Stock Purchase And Stockholders Agreement" (the "Stockholders Agreement"), filed as an attachment to Defendants' motion, provides as follows:

> 7.4  Governing Law. This Agreement, and the rights of the parties hereto, shall be **governed by and construed in accordance with the laws of the State of New York** without regard to the conflicts of law principles of any jurisdiction. **No suit, action or proceeding with respect to this Agreement may be brought in any court** or before any similar authority **other than in a court of competent jurisdiction in the State of New York** and the parties hereby submit to the **exclusive jurisdiction** of such courts for the purpose of such suit, proceeding or judgment. Each of the parties hereto hereby irrevocably waives any right which it may have had to bring such an action in any other court, domestic or foreign, or before any similar domestic or foreign authority and agrees not to claim or plead the same. Each of the parties hereto hereby irrevocably and unconditionally waives trial by jury in any legal action or proceeding in relation to this Agreement and for any counterclaim therein.

(Document No. 26, p.14) (emphasis added).

In support of the pending motion, Defendants focus on arguments that the forum selection clause is mandatory and that this action is within its scope, rather than addressing the four factors related to reasonableness (or the eleven factors related to transfer) identified above.

Defendants first assert that the clause provides that the courts of New York have "exclusive jurisdiction" and that no such action can be brought "in any other court." (Document No. 25,

pp.12-13) (citing Document No. 26, p.14; Weingard v. Telepathy, Inc., 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005); and Queen City Pastry, LLC v. Bakery Tech. Enter., LLC, 5:14-CV-142-RLV, 2015 WL 3932722, at *5 (W.D.N.C. June 26, 2015)).

Next, Defendants assert that although Plaintiff has avoided a breach of contract claim, all of its claims "arise out of and are predicated upon the Stockholder Agreement, specifically the 'Exclusivity Clause.'" (Document No. 25, pp.13-15). See also, (Document No. 26, pp.10-11).

In response, Plaintiff contends that the "forum selection clause is phrased narrowly and concerns only those claims 'with respect' to the Agreement." (Document No. 27, p.3) (citing Document No. 26, p.14). Plaintiff further contends that it has not alleged a breach of the Stockholders Agreement and that "the fraud claim against Finn and Sciemus arises out of facts entirely independent of the Agreement." (Document No. 27, p.4).

Plaintiff states that it "would likewise be inappropriate to apply the forum selection clause to SPS's claims for breach of fiduciary duty against the Defendants since SPS is not seeking relief under the Agreement, nor do the claims originate 'with respect' to that contract." Id. Plaintiff also asserts that Geisse is a non-party to the Stockholders Agreement, so the forum selection clause does not apply to him.

In reply, Defendants contend that the principal "wrongdoing" asserted by Plaintiff in the Amended Complaint is "Sciemus' refusal to consent to the so-called FM Global 'opportunity.'" (Document No. 28, p.1). Defendants argue that SPS has admitted "that the fiduciary duty claims are premised on the exercise of the Exclusivity Clause of the Stockholder Agreement regarding the FM Global 'opportunity.'" (Document No. 28, p.2) (citing Document No. 27, p.4). See also (Document No. 26, pp.10-11; § 5.5 "Exclusivity Agreement"). Defendants contend that whatever

Sciemus did with regard to consent (or non-consent) as to FM Global and/or the Exclusivity Clause – "was the exercise of a contractual right; nothing more, nothing less." Id.

Defendants go on to argue that courts consistently hold that forum selection clauses are to be interpreted broadly and routinely apply contract-based forum selection clauses to related tort claims. (Document No. 28, p.13) (citations omitted). Defendant contends that the pertinent language at issue here from the forum selection clause – "with respect to" – is equivalent to "relate to," and not the more narrow language "arising out of." (Document No. 28, p.14).

The undersigned finds Defendants' arguments more persuasive. In particular, it does appear that the crux of Plaintiff's Amended Complaint is the alleged failure by Defendants to perform as required by the Stockholders Agreement, and specifically the Exclusivity Clause. Of course, Plaintiff accurately notes that it has not included a breach of contract claim; however, as noted by Defendants, the Amended Complaint does premise its fiduciary duty claims on the Stockholders Agreement. See (Document No. 28, p.2) (citing Document No. 16, pp.7-10). For example, the Amended Complaint alleges that Sciemus and Finn "stifled any opportunities between SPS and FM Global" and that this "was yet further evidence of Finn's self-dealing and **abuse of the Exclusivity Clause**, **which breached his fiduciary duty to SPS**." (Document No. 16, p.9) (emphasis added). As such, the undersigned is satisfied that a sufficient portion of the Amended Complaint is brought "with respect to" (or is related to) the Stockholders Agreement, and therefore, its forum selection clause is applicable here.

Moreover, Plaintiff has not presented any compelling arguments that: (1) the formation of the clause was procured by fraud or overreaching; (2) the complaining party will be deprived of his day in court because of the inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or that (4) the

9

enforcement of the clause would contravene a strong public policy of the state. See Allen v. Lloyd's of London, 94 F.3d at 928. Thus, Plaintiff has not sufficiently satisfied its burden to show that the forum selection clause is unreasonable.

Based on the foregoing, the Court will turn to the factors to be considered under 28 U.S.C. § 1404(a).

**B.  1404(a) Factors**

As mentioned above, Defendants' briefs fail to provide any analysis of the eleven factors this Court usually weighs when considering a motion to transfer venue. See (Document Nos. 25 and 28). Plaintiff's response is not much more helpful, but does provide a cursory discussion of a few of the factors. See (Document No. 27, pp.10-11).

The undersigned will provide a brief analysis of each factor in turn.

**1.  Plaintiff's Choice of Forum**

"Having established the presumption directed by the choice of forum clause, the court then proceeds to analyze eleven (11) factors—including the forum selection clause—to determine whether to grant the motion to transfer under 28 U.S.C. § 1404(a)." Inheanacho, 2013 WL 636876, at *2. The undersigned finds the following excerpt from a prior decision of this Court to be instructive here.

> "A plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed." *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.,* 719 F.Supp. 446, 451 (W.D.N.C. 1989) (citations omitted). Seemingly, this first factor would favor retention in North Carolina, because ACC originally filed this action in North Carolina. However, as the Supreme Court noted in *Stewart,* these factors must be viewed with reference to "the parties' expressed preference ... in light of the forum-selection clause." *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239. "**When a forum-selection clause is part of the balancing, as *Stewart* requires, it is more logical to consider the plaintiff's initial choice of forum to be the**

**forum that is contractually agreed upon**." *Republic Mortg. Ins. Co.,* 35 F.Supp.2d at 486. The Eleventh Circuit echoed this sentiment in holding that:

> [I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered. In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989). Accordingly, having determined the forum selection clause is valid, this factor *heavily* weighs in favor of transferring venue to California.

AC Controls Co., Inc. v. Pomeroy Computer Res., Inc., 3:03-CV-302-GCM, 284 F.Supp.2d 357, 363 (W.D.N.C. 2003) (emphasis added).

Having found the underlying forum selection clause to be reasonable and applicable, the undersigned agrees with Judge Mullen's analysis and cited authority determining that it is more logical to consider Plaintiff's initial choice of forum to be the forum that was contractually agreed upon. AC Controls Co., Inc., 284 F.Supp.2d. at 363; see also, Republic Mortg. Ins. Co., 35 F.Supp.2d 482, 486 (M.D.N.C. 1999).

Like the Court in AC Controls Co., Inc., the undersigned finds that the underlying forum selection clause in this case weighs heavily in favor of transferring venue to New York.

**2. Residence of the Parties**

Plaintiff is a North Carolina corporation with a principal place of business in Charlotte, North Carolina. (Document No. 16, p.2). Defendants are headquartered in and/or residents of London, England. (Document No. 16, pp.2-3). The undersigned finds that this factor weighs against transfer.

**3. Access to Evidence**

Neither side has suggested any issues regarding access to evidence. Presumably, this business dispute will focus on a few documents, including the Stockholders Agreement, and the testimony of representatives from each side. Without more information, the undersigned finds this factor to be neutral.

**4. Convenience of Witnesses**

Neither side specifically identifies any witnesses, but the undersigned assumes based on the papers that Defendants Finn and Geisse, as well as Peter Niland ("Niland") who provided a "Sworn Declaration…" (Document No. 26) are possible witnesses. Apparently, each of these individuals are residents of London, England, and prefer travel to New York City over travel to Charlotte. (Document No. 25, p.16).

In one of the few statements the Court might construe as related to these factors, Defendants do state that "travel for witnesses for both sides would be greatly enhanced by a New York City venue." (Document No. 25, p.16). Defendants mention the major air hubs in New York City, and that each side has legal representation in New York, but declines to elaborate further. As such, it is unclear why New York is more convenient for Defendants than Charlotte.

Plaintiff does not make any statement regarding witnesses or their convenience. It is likely, that Plaintiff will have witnesses located in or near its principal place of business in Charlotte. However, it is also likely there are witnesses in other places.

For example, the Amended Complaint alleges that Defendants breached their duties to Plaintiff with respect to the Exclusivity Clause by causing Plaintiff to "miss lucrative opportunities with FM Global." (Document No. 16, pp.6-9). Plaintiff identifies FM Global as "an international property insurance and loss prevention engineering company that, much like Sciemus purported to do, employs engineering and data analytics to evaluate risk and premiums for covered assets." (Document No. 16, p.7). However, Plaintiff does not explain whether witnesses from FM Global will be called in this matter, or where they are located.

Based on the facts and arguments before the Court, the undersigned finds that this factor favors transfer.

**5. Possibility of a View by the Jury**

There is no indication there is any need for a jury to view any location related to this lawsuit. The undersigned finds this factor to be neutral.

**6. Enforceability of a Judgment**

The undersigned is not aware of any likely difficulty enforcing a judgment from a court in New York or North Carolina. The undersigned finds this factor to be neutral.

**7. Relative Advantages and Obstacles to a Fair Trial**

Neither side has identified any advantages or obstacles to a fair trial. The undersigned finds this factor to be neutral.

**8. Practical Issues Affecting Trial Expediency and Efficiency**

"Trials are never easy, expeditious, or inexpensive." Century Furniture, LLC v. C & C Imports, Inc., 1:07-CV-179–DLH, 2007 WL 2712955, at *5 (W.D.N.C. Sept. 14, 2007). Whatever this Court decides, there will be some travel and inconvenience. Here, the parties have not identified, and the Court is unaware of any, particular practical issues affecting expediency and efficiency. As such, the undersigned finds this factor to be neutral.

**9. Relative Court Congestion Between the Districts**

Defendant asserts that the "Southern District is obviously skilled in handling commercial matters and international disputes," but offers no other argument or evidence on this point. (Document No. 25, p.16).

Plaintiff acknowledges that both the Western District of North Carolina and the Southern District of New York "are saddled with heavy dockets and significant cases," but contends that the Federal Court Management Statistics from 2016 shows that there are more pending cases per judgeship in the Southern District of New York than the Western District of North Carolina. (Document No. 27, p.10).

The undersigned has reviewed the data tables for the "U.S. District Courts − Combined Civil and Criminal Federal Court Management Statistics" as of March 31, 2017. See www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/03/31-1. Those tables show that the Southern District of New York ("S.D.N.Y.") has a slightly lower total caseload per judgeship, but a higher civil caseload per judgeship, than this Court ("W.D.N.C."). The tables also indicate that S.D.N.Y. has 28 judgeships, while W.D.N.C. has 5. While the tables do factor in some vacant judgeship months for S.D.N.Y, they, of course, do not account for imminent vacancies, such as the vacancy the W.D.N.C. faces beginning August 31, 2017.

14

Based on the available statistics, the undersigned finds that this factor weighs slightly against transfer as of the date of this Order; however, it is quite possible that the numbers will suggest a different outcome a month from now – and for the lifetime of this case.

**10. Interest of Resolving Localized Controversies Settled at Home**

Plaintiff also makes an argument that this is a localized controversy that should be settled at home. (Document No. 27, pp.10-11). Plaintiff contends that "[w]here a controversy and harm occurs within this state and 'has the greatest impact on citizens of North Carolina,' '[t]here is a strong interest in having it resolved in North Carolina." Id. (quoting Rice v. Bellsouth Advertising & Pub. Corp., 240 F.Supp.2d 526, 531 (W.D.N.C. 2002)). Plaintiff also contends that a diversity case should be "in a forum that is at home with a state law that must govern the action." (Document No. 27, p.10).

The undersigned finds that this factor presents a close call. Plaintiff is a North Carolina corporation that has allegedly suffered harm within the W.D.N.C. However, the undersigned is reluctant to give much weight to this matter as a "localized" controversy where it involves a sophisticated Plaintiff that entered into agreements with Defendants in the United Kingdom. One of those agreements, as decided above, provides for the application of New York law in New York courts, and the other – which is barely mentioned by the parties in this dispute – calls for disputes to be resolved by arbitration in London, England and/or the courts of England, and to be governed by the laws of England and Wales. See (Document No. 26, pp.14, 27-28).

If the Court applies Plaintiff's argument that this case should be in the forum that is at home with the state law that must govern the action, then based on the Court's finding that the forum selection clause is reasonable and applicable here, the case belongs in New York.

To the extent Plaintiff asserts that N.C.Gen.Stat. §22B-3 requires this action to remain in North Carolina, the undersigned notes that this Court has recently held that "[c]ourts within North Carolina have enforced forum selection clauses notwithstanding this statute." Tauss v. Jevremovic, 5:15-CV-148-RLV, 2016 WL 4374046, at *3 (W.D.N.C. Aug. 12, 2016) (citations omitted).

Under the circumstances, the undersigned will weigh this factor as neutral.

**11. Avoidance of Unnecessary Problems with Conflict of Laws**

Neither side addresses this factor. The undersigned is not persuaded that an unnecessary problem with conflicts of laws would be created by transfer, and thus finds this factor neutral.

## CONCLUSION

Based on the foregoing, the Court in its discretion will direct that this case be transferred. The undersigned is not persuaded that the factors favoring retention outweigh those favoring transfer – particularly the forum selection clause in the parties' Stockholders Agreement. Rather, the circumstances of this case and the interests of justice dictate that this matter should be transferred.

**IT IS, THEREFORE, ORDERED** that "Defendant Sciemus, Ltd. And Stefan Geisse's Motion To Transfer Pursuant To 28 U.S.C. § 1404…" (Document No. 24) is **GRANTED**. This matter shall be transferred to the United States District Court for the Southern District of New York.

**SO ORDERED**.

Signed: August 8, 2017

David C. Keesler
United States Magistrate Judge